SOLOMON FELDMAN, JR. *v.* ARKANSAS STATE
BOARD OF LAW EXAMINERS

5-5545

464 S. W. 2d 789

Opinion delivered March 29, 1971

*Solomon Feldman,* pro se.

*Jack Barron,* for appellee.

LYLE BROWN, Justice. Solomon Feldman, Jr., appellant, made application to the Arkansas State Board of Examiners, appellee, to write the examination scheduled for March 1971. The application was denied. Appellant contends that the action of the board violates constitutionally secured rights; that such action is in conflict with a rule of this court governing admission to the bar; and that the petitioner was not informed of the rule change which would cut off his right to take the examination.

Appellant is a 1965 graduate of the Arkansas Law School. The night school graduated its last class in 1967 and thereafter ceased to operate. In 1968 the board of examiners took cognizance of the fact that an unusual number of the graduates of the school had lately failed the examinations. On July 27, 1968, the board of examiners terminated its approval of the school. That action was pursuant to our Rule XII, which says that a candidate for the bar must be a graduate of a law school approved by the American Bar Association or by the State Board of Law Examiners. (The night school was not on the approved list of the American Bar.) In order not to abruptly withdraw the right of the night school graduates to take the examination, the board made the termination of the school effective after the July 1970 examination. Consequently the graduates were allowed four more opportunities to take the examination, they being given twice a year.

Appellant has twice written the examination and failed—July 1969 and March 1970. He did not offer himself for examination in July 1970. The following month he made application to write the examination to be given in March 1971, and the denial of that application is the basis of this litigation. It should be noted that five years elapsed between appellant's graduation and the cutoff date. During that period the examination was given ten times.

Appellant contends that the rule as applied to grad-

uates of Arkansas Law School is unconstitutionally retrospective and violates the equal protection clauses of the Federal and State Constitutions. "Previous to the ruling of the Board, the petitioner had the right to take the examination again. That was a vested right which was divested upon the application of the present rule." Also, petitioner says: "The law as applied by the State Board discriminates against those persons acquiring a degree from the old Arkansas Law School, while it does not work against any other candidate for admission to the bar."

If the action of the board in removing Arkansas Law School from the approved list was not "invidiously discriminatory," and if the action had a "rational connection" with the fitness of a certain class of persons to practice law, then the board did not offend against the due process or equal protection clause of the Fourteenth Amendment. *Schware* v. *Board of Bar Examiners,* 353 U. S. 232 (1957). The same authority recognizes the power of the states to set high standards of qualifications for the practice of law, just so long as they do not contravene the recited nondiscriminatory and rational connection rules above stated.

We think the action of the board conformed to the principles recited in *Schware.* The board decided that the academic standards of the school had so declined that an unusual number of the graduates were failing bar examinations; consequently it was thought to be to the best interest of the public and the profession that the school be removed from the approved list. In order to avoid hardship which might appear to be discriminatory, the removal of the school was set up to a future date which would give any graduate who had not taken or passed the bar examination a period of two years (four examination dates) in which to write the examination. It will be remembered that the appellant graduated in 1965; thus a period of five years lapsed before the cutoff date. It would not be illogical to conclude that a 1965 graduate who did not pass the examination in the five year period would not have retained the scholastic attributes needed to succeed in the profession.

Appellant classifies the 1968 action of the board as retrospective. He says he had a vested right to take the examination and that the board's ruling divested him of that right which he acquired at the time of his graduation. As we have previously pointed out, the board's action was made to work prospectively. Appellant was given four more opportunities to write the examination. He exercised that privilege on two occasions but for reasons unexplained he did not present himself for examination on either of the other two dates. The authority of the board to approve schools necessarily carried with it the power to revoke approval. When such revocation carries with it a proviso which reasonably protects students who entered the school at the time it was on the approved list, the action of the board has been upheld. *Blodgett, State's Attorney ex rel Bazil* v. *Boardman,* 18 A. 2d 370 (Conn. 1941).

Appellant contends that the rule which eliminated Arkansas Law School from the approved list is contrary to our rules promulgated by constitutional authority. Amend. 28, Ark. Constitution. He points out that this court has made the rule that an applicant has the right to take the bar examination a total of four times and after that only by special permission. Appellant argues that "The State Board of Law Examiners now say that any applicant formerly from the old Arkansas Law School cannot take the examination after July 1970." Appellant overlooks the fact that the right to take an examination is vested only in those who are graduates of a law school approved by the board or by the American Bar Association.

We come to the last point advanced by appellant. He says he was never informed of the new rule regarding the eligibility of Arkansas Law School graduates to take the examination. Here is the rule adopted in July 1968: "A discussion was had concerning the termination of the approval of Arkansas Law School. It was duly moved by Mr. Leflar and seconded by Mr. Hyatt that the approval of the Arkansas Law School terminate with the July 1970 examination." The motion, which was unanimously passed, is the only action taken by the

board with reference to the termination of approval of the school or the right of the school's graduates to write the examination. Clearly, of course, the purpose of the rule was to terminate the right, on the cutoff date, of a night school graduate to thereafter write the examination.

Appellant was his only witness before the board. He testified that the secretary gave him two information sheets concerning bar rules; that he had a conversation with Herman Hamilton when the latter was chairman of the board; that he conversed with Ray Thornton when he was board chairman; that he talked with board member Steele Hays; that he had several conversations with the secretary of the board; and that Mr. Hamilton expressed the opinion that he was not cut off from taking the examination. Appellant testified that at no time was he advised of the 1968 rule and he insisted that had he been so advised he would have taken the July 1970 examination. His evidence of the recited contacts was not contradicted. Our problem stems from the fact that we cannot tell from the record when those contacts were made (if in fact some or all of them were made). The point is, if this applicant made timely contact with one or more officers of the board and discussed with them (as he says he did) the subject of his writing the examination, he was entitled to be informed of the deadline imposed by the rule for his taking the examination. Unfortunately, the 1968 rule was never published. The last rules governing admission to the bar were published in 1963. The only archive in which the cutoff rule is to be found is in the minutes of the bar examining committee. (The responsibility for publishing the rules rests with this court; had we timely met that obligation the problem might not now be before us.)

We could say that the burden of establishing the dates of his contacts was on appellant, and affirm. However, since the committee is a creature of this court we prefer to avoid such a minor technicality and give the applicant the benefit of every doubt, just so our action does not offend basic law.

Upon request being made by appellant the board shall set a hearing date, at which the single issue of lack of notice will be explored.

Reversed.

FOGLEMAN, J., not participating.